UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KASLEY ALVELO, *on behalf of herself*, Kasely Alvelo, *on behalf of all others similarly situated*,

Plaintiff,

-against-

BEST BUY STORES, L.P.

Defendant.

Case No.: 22 cv 7997

**NOTICE OF REMOVAL**

Removed from:

Supreme Court of the State of New York, County of New York
(Index No. 652903/2022)

PLEASE TAKE NOTICE that Defendant Best Buy Stores, L.P. ("Best Buy" or "Defendant") hereby removes the state court action described herein, filed by Plaintiff Kasley Alvelo ("Plaintiff") in the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. Defendant makes the following allegations in support of its Notice of Removal:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States District Courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

## II. VENUE

2. Plaintiff originally brought this action in the Supreme Court of the State of New York, County of New York. Therefore, venue lies in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1441(a), and 1446(a).

## III. PLEADINGS, PROCESS, AND ORDERS

3. On August 12, 2022, Plaintiff filed a Complaint against Defendant in New York County Supreme Court, captioned *Kasley Alvelo, on behalf of herself, Kasely Alvelo, on behalf of all others similarly situated, Plaintiff v. Best Buy Stores, L.P., Defendant*, designated Index No. 652903/2022 (hereafter, "Complaint"), which is attached hereto as **Exhibit A**.

4. The Complaint asserts one cause of action concerning an alleged failure to pay uniform maintenance costs in violation of the New York Labor Law. The allegations in the Complaint are incorporated into this Notice of Removal by reference without admitting the truth of any of them.

5. On August 18, 2022, Defendant was served the Complaint, along with copies of the Summons, Complaint, and Notice of Electronic Filing through Defendant's registered agent for service of process, CT Corporation System. Attached hereto as **Exhibit B** is a true and correct copy of the Summons, Complaint, and Notice of Electronic Filing, and Proof of Service served through CT Corporation System.

6. On September 7, 2022, the parties stipulated to an extension of time to respond to the Complaint until October 7, 2022. A copy of the stipulation is annexed hereto as **Exhibit C**. Exhibits A, B, and C comprise all of the documents contained on the New York County Supreme Court's docket and the documents served on Defendant.

7. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the New York County Supreme Court or served upon Defendant. To Defendant's knowledge, no proceedings related hereto have been heard in New York County Supreme Court.

## IV. TIMELINESS OF REMOVAL

8. An action may be removed from state court by filing a notice of removal – together with a copy of all process, pleadings, and orders served on the defendant – within thirty days of defendant receiving service of the initial pleading. 28 U.S.C. § 1446(b).

9. Removal of this action is timely because this Notice of Removal has been filed within thirty days of August 18, 2022, when Defendant was served with the Summons and Complaint. *See* 28 U.S.C. § 1446(b). Because Plaintiff personally served the Summons and Complaint upon Defendant's agent for service of process on August 18, 2022, the thirty-day period for removal runs through September 19, 2022. *See* Fed. R. Civ. P. 6 (extending deadline that otherwise falls on a weekend to the next Monday).

## V. CAFA JURISDICTION

10. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, where there are at least 100 putative class members, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is properly removed by the filing of this Notice of Removal.

### A. This Is A Class Action.

11. Plaintiff filed this action as a class action. *See* **Exhibit A**.

### B. The Proposed Class Contains At Least 100 Members

12. The provisions of CAFA apply to proposed class actions involving 100 individuals or more. 28 U.S.C. § 1332(d)(5)(B). This requirement is met in this case.

13. Plaintiff seeks to represent a putative class consisting of "All current and former employees who worked for Defendant in the State of New York during the Class Period who were paid an hourly rate within $1.50 of the applicable minimum wage and who were required as a condition of their employment to wear uniforms; were not offered or provided laundering services

for the required uniforms; were not provided uniform maintenance pay or reimbursement; and/or were required to pay for their required uniforms." *See* Exhibit A ¶ 11.

14. As it relates to the putative class, Defendant employed in excess of 100 employees in the State of New York from August 12, 2016 to the filing of this removal. During the relevant time period, Best Buy employed approximately 12,942 individuals in New York that were paid an hourly rate within $1.50 of the applicable minimum wage. *See* Declaration of Bonny Nelson in Support of Notice of Removal to Federal Court, ¶ 3 (hereinafter "Nelson Decl."), dated September 19, 2022, annexed hereto as **Exhibit D**. Thus, CAFA's requirement that the action involve 100 or more individuals is satisfied.

**C. Defendant Is Not A State, State Official, Or Governmental Entity.**

15. CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(B).

16. Defendant is not a state, state official, or other governmental entity exempt from CAFA.

**D. There Is Diversity Between At Least One Putative Class Member And One Defendant.**

17. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the unnamed putative class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Minimal diversity of citizenship exists here because Plaintiff and Defendants are citizens of different states.

18. Plaintiff is a Citizen of New York. For diversity purposes, a person is a "citizen" of the state in which she is domiciled. Here, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in and was a citizen of the State of New York. *See* Exhibit A, ¶ 1 ("Plaintiff is . . . a citizen of New York State and resides in New

York County."). Accordingly, for purposes of diversity jurisdiction, Plaintiff is a citizen of the State of New York.

19. Defendant Best Buy is a Citizen of Minnesota and Virginia. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Best Buy is a Limited Partnership organized and existing under the laws of the State of Virginia with its headquarters in Richfield, Minnesota. *See* Declaration of Hannah G. Olson ¶¶ 4-5, dated September 16, 2022 ("Olson Decl."), annexed hereto as **Exhibit E**.

20. The "principal place of business" of an unincorporated association, for purposes of 28 U.S.C. § 1332(d)(10), is the association's "nerve center," or "the place where a[n] [association's] officers direct, control, and coordinate the [association's] activities." *See Hertz v. Friend*, 559 U.S. 77 (2010). "[I]n practice," the Supreme Court explained, "it should normally be the place where the [association] maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . ." *Id.* A limited partnership's principal place of business is often the office that the public considers to be its main place of business. *Id.* at 1193. The Supreme Court emphasized in *Hertz* that the "nerve center test" should be one of "administrative simplicity." *Id.*

21. Best Buy's principal place of business is located at 7601 Penn Avenue South, Richfield, Minnesota 55423. *See* Olson Decl. ¶ 5. Best Buy's high-level management team is based in Minnesota and directs its business from the Minnesota headquarters. *Id.* ¶ 7. The majority of Best Buy's executive and administrative functions take place in Minnesota. *Id.* ¶ 8. The greater part of Best Buy's domestic administrative functions (including payroll, accounting, purchasing, marketing, and information systems) are performed in Minnesota. *Id.* ¶ 9. Best Buy holds itself out to the public as having its corporate headquarters in Minnesota. *Id.* ¶ 6.

22. Thus, Best Buy is a citizen of Minnesota for diversity purposes under CAFA. 28 U.S.C. § 1332(d)(10).

23. Even considering the location of Best Buy's general and limited partners for purposes of determining its principal place of business, Best Buy is not a citizen of New York.

24. Best Buy's general and limited partners are BBC Property Co. and BBC Investment Co. *See* Olson Decl., ¶ 10. BBC Property Co. is a corporation incorporated in the State of Minnesota with its principal place of business in the state of Minnesota. *Id.* ¶ 11. BBC Investment Co. is a corporation incorporated in the State of Nevada with its principal place of business in the state of Minnesota. *Id.* ¶ 12. Accordingly, Best Buy's general and limited partners are not citizens of New York for purposes of removal.

25. No other party has been named or served as of the date of this removal. Accordingly, the named Plaintiff is a citizen of a state different from Defendant, and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**E.     The Amount In Controversy Exceeds $5,000,000.**

26. To assess whether CAFA's $5,000,000 amount-in-controversy requirement is satisfied, "the claims of the individual class members shall be aggregated," 28 U.S.C. § 1332(d)(6), and a defendant need only plausibly allege that the value of those aggregated claims will exceed $5,000,000. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

27. A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citation omitted). This short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

28. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. *See* Senate Judiciary Report, S. REP. 109-14, at 42 ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case."); *id.* at 43 ("Overall, new section 1332(d) is intended to expand

substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.”).

29. Defendant denies Plaintiff's claims and allegations, and vigorously denies that (i) Plaintiff and putative class members are entitled to any relief, and (ii) Plaintiff's claims are appropriate for class treatment. For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the allegations of Plaintiff's Complaint establish that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000.[1]

30. Plaintiff filed her Complaint on August 12, 2022, and alleges one cause of action concerning the alleged failure to pay uniform maintenance costs in violation of the New York Labor Law, and an apparent allegation for off the clock work in violation of the New York Labor Law. *See* Exhibit A ¶¶ 37-38, 43-49.

31. Applying a six-year statute of limitations available under the New York Labor Law, the statutory period begins August 12, 2016 through present.

32. During the statutory period, there were at least 12,942[2] employees in the State of New York who were paid an hourly rate within $1.50 of the applicable minimum wage, which Plaintiff alleges were required to wear a uniform. *See* Nelson Decl. ¶ 3.

33. Of the 12,942 employees in New York, 5,373 were in New York City, 3,837 were in the counties of Westchester, Nassau and Suffolk, and 3,732 were in New York counties outside of New York City, Westchester, Nassau and Suffolk. *See id.* ¶ 1 on pg. 2 (erroneously renumbered as 1).

---

[1] Specific references to potential damages are identified solely to establish that the amount in controversy plausibly exceeds the jurisdictional threshold. Many of Plaintiff's allegations lack merit and Plaintiff cannot establish Defendant's liability on an individual or class-wide basis. Nothing contained herein shall be an admission that Plaintiff can recover any damages. Further, Plaintiff is subject to an arbitration agreement, requiring her to proceed with her claims on an individual basis in arbitration, and not on a class-wide basis.

[2] This number does not account for hiring since on or around September 14, 2022.

34. The total number of workweeks worked in the statutory period, in the aggregate, by the 12,942 employees equals 1,003,834. *See id.* ¶ 2 on pg. 2 (erroneously renumbered as 2).

**Uniform Maintenance Claim**

35. Plaintiff's Complaint alleges that she was employed by Best Buy as a sales representative in New York City from November 2018 through January 2020. *See* Exhibit A ¶ 27.

36. Plaintiff alleges that she and the putative class, during their employment, were required to wear a uniform at all times with Defendant's logo during every shift she worked, that they wore the uniform every shift they worked, and that Defendant did not launder, or offer to launder, the uniforms. *Id.* ¶¶ 31-35, 43-46.

37. Plaintiff further alleges that Defendant issued her and the putative class uniforms for Defendant's benefit, and that it was a condition of their employment to wear the uniform in a "clean condition." *Id.* ¶¶ 36, 45.

38. Plaintiff alleges that she and the putative class were never paid uniform maintenance pay. ¶¶ 37, 46.

39. New York law requires employers to pay uniform maintenance pay if the employer requires that a uniform be worn by its employees. *See* 12 N.Y.C.R.R. §§ 142-2.22, 142-2.5(c).

40. As to those employers requiring a uniform, as Best Buy is alleged to have done, beginning on December 31, 2016, New York required large employers (those with 11 or more employees) in New York City and employers outside of New York City to pay employees a particular weekly uniform maintenance rate depending on the hours worked in a workweek and the county in which the work was performed, in accordance with the below schedule. 12 N.Y.C.R.R. § 142-2.5(c).

| | **New York City Large Employers (11 or more employees)** | **Nassau, Suffolk, and Westchester Counties** | **Remainder of New York State** |
|---|---|---|---|
| **On and After December 31, 2016** | $13.70 high, $10.80 medium, $6.55 low | $12.45 high, $9.85 medium, $5.95 low | $12.05 high, $9.55 medium, $5.75 low |
| **On and After December 31, 2017** | $16.20 high, $12.80 medium, $7.75 low | $13.70 high, $10.80 medium, $6.55 low | $12.95 high, $10.25 medium, $6.20 low |
| **On or After December 31, 2018** | $18.65 high, $14.75 medium, $8.90 low | $14.95 high, $11.80 medium, $7.15 low | $13.80 high, $10.90 medium, $6.60 low |
| **On or After December 31, 2019** | | $16.20 high, $12.80 medium, $7.75 low | $14.70 high, $11.60 medium, $7.00 low |
| **On or After December 31, 2020** | | $17.40 high, $13.75 medium, $8.30 low | $15.55 high, $12.30 medium, $7.45 low |
| **On or After December 31, 2021** | | $18.65 high, $14.75 medium, $8.90 low | $16.40 high, $13.00 medium, $7.85 low |

41. Employers are required to pay a "high" rate to who those employees working over 30 hours per week; a "medium" rate to those employees working more than 20 hours but less than 30 hours per week; and a "low" rate to those employees working 20 hours or less. 12 N.Y.C.R.R. § 142-2.5(c).

42. Prior to the amendments that took effect on December 31, 2016, 12 NYCRR § 142-2.5(c)(5) required that employers pay employees required to wear a uniform as follows: $11.20 per week on and after December 31, 2015, if the employee works more than 30 hours weekly; $ 8.85 per week on and after December 31, 2015, if the employee works more than 20 but not more than 30 hours weekly; and $ 5.35 per week on and after December 31, 2015, if the employee works 20 hours or less weekly. 12 N.Y.C.R.R. § 142-2.5(c) (2016).

43. Even utilizing the lowest uniform maintenance pay required in 2016 (i.e. $5.35) across the entire statutory period and multiplying that number by the total number of available workweeks across the statutory period (1,003,834 workweeks) worked by the 12,942 employees, potential damages could exceed **$5,370.511.90** ($5.35 * 1,003,834 = $5,370.511.90).

44. **Standing alone, this claim exceeds the amount in controversy requirement.**

**Off the Clock Claim**

45. In addition, Plaintiff alleges that she and the putative class are entitled to wages for time spent off the clock laundering and maintaining the uniforms, as well as the money spent in laundering and maintaining the uniforms. *Id.* ¶¶ 38, 47.

46. Beginning on December 31, 2016, New York required large employers (those with 11 or more employees) in New York City and employers outside of New York City to pay employees a particular minimum wage rate depending on the county in which the work was performed, in accordance with the below schedule. 12 N.Y.C.R.R. § 142-2.1.

|  | New York City Large Employers (11 or more employees) | Nassau, Suffolk, and Westchester Counties | Remainder of New York State |
|---|---|---|---|
| On and After December 31, 2016 | $11.00 | $10.00 | $9.70 |
| On and After December 31, 2017 | $13.00 | $11.00 | $10.40 |
| On or After December 31, 2018 | $15.00 | $12.00 | $11.10 |
| On or After December 31, 2019 |  | $13.00 | $11.80 |
| On or After December 31, 2020 |  | $14.00 | $12.50 |
| On or After December 31, 2021 |  | $15.00 | $13.20 |

47. Prior to the amendments that took effect on December 31, 2016, 12 NYCRR § 142-2.1 required that employers pay employees an hourly minimum wage of $9.00. *See* 12 N.Y.C.R.R. § 142-2.1 (2016).

48. Using a conservative estimate of just one (1) hour of unpaid wages per workweek by each of the 12,942 employees at the lowest available minimum wage required in 2016 ($9.00) across the entire statutory period, and multiplying that number by the total number of available workweeks across the statutory period (1,003,834 workweeks) worked by the 12,942 employees, potential damages could exceed **$9,034,506.00** ($9.00 * 1,003,834 = $9,034,506).

49. **Standing alone, this claim exceeds the amount in controversy**.

**Attorneys' Fees**

50. Finally, Plaintiff seeks attorneys' fees and costs in his Complaint. *See* Exhibit A, Prayer for Relief. Thus, the Court must consider attorneys' fees in determining whether the amount in controversy is met as it is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See*, *e.g.*, No. 13 Civ. 6520 (GBD), *Fields v. Sony Corp. of Am.*, 2014 U.S. Dist. LEXIS 109249, *7-8 (S.D.N.Y. Aug. 4, 2014) (defendants may include attorneys' fees in the amount in controversy on a claim brought pursuant to the New York Labor Law).

51. In New York, a "reasonable amount of attorneys' fees in a wage and hour class action is up to one-third of the total recovery." *Id.*

52. Based on the above, the amount in controversy for Plaintiff's claims for unpaid wages and uniform maintenance pay is conservatively **$14,405,017.90**. This subtotal well exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at one-third of the total recovery further increases the amount in controversy by $**4,801,672**. for a total amount in controversy of **$19,206,689.90**.

## VI. SUMMARY AND CONCLUSION

53. As explained above, removal of this action is proper, as the aggregate value of Plaintiff's causes of action for unpaid wages, uniform maintenance pay, and attorneys' fees are well in excess of the CAFA jurisdictional requirement of $5 million utilizing the lowest uniform maintenance rate of $5.35 per week and the lowest applicable minimum wage of $9.00/hr during the statutory period. *See* 28 U.S.C. § 1332(d)(2). Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required under CAFA.

54. Following the filing of this Notice of Removal in the United States District Court for the Southern District of New York, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, Mohammed Gangat, Law Office of Mohammed

Gangat, and a copy of the Notice of Removal will be filed with the Clerk of the New York County Supreme Court in accordance with 28 U.S.C. § 1446(d).

55. Defendant reserves all defenses, including defenses as to sufficiency of service of process, personal jurisdiction, and arbitration.

56. Indeed, Defendant will move to compel arbitration of Plaintiff's claims on an individual basis.

WHEREFORE, Defendant hereby removes this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated: September 19, 2022

LITTLER MENDELSON, P.C.

*/s/ Daniel Gomez-Sanchez*

Daniel Gomez-Sanchez
290 Broadhollow Road, Suite 305
Melville, New York 11747
Tel : 631-247-4713
Fax : 631-824-9249.
dsgomez@littler.com

Attorneys for Defendant

4885-9050-8851.3 / 051329-1020